ACCEPTED
01-15-00054-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/16/2015 9:56:59 AM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00053-CR
## No. 01-15-00054-CR

**IN THE COURT OF APPEALS**
**FOR THE FIRST DISTRICT OF TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/16/2015 9:56:59 AM
CHRISTOPHER A. PRINE
Clerk

**DAMIAN SCOTT**

*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

On Appeal from Cause Numbers 1410122 & 1410123
From the 174th District Court of Harris County, Texas

**BRIEF FOR APPELLANT**

ORAL ARGUMENT REQUESTED

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**MELISSA MARTIN**
Assistant Public Defender
Harris County, Texas
TBN. 24002532
1201 Franklin, 13th floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 437-4319

**Counsel for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                                   Damian Scott
                                             SPN# 01891026
                                             701 N San Jacinto St
                                             Houston, TX 77002


TRIAL PROSECUTORS:                           Gretchen Flader
                                             Assistant District Attorney
                                             Harris County, Texas
                                             1201 Franklin Avenue, 6th Fl
                                             Houston, Texas 77002


DEFENSE COUNSEL AT TRIAL:                    Paul St. John
                                             Attorney at Law
                                             111 W 15th St
                                             Houston, Texas 77008


PRESIDING JUDGE:                             Hon. Ruben Guerrero
                                             174th District Court
                                             Harris County, Texas
                                             1201 Franklin Avenue, 19th Fl
                                             Houston, Texas 77002


COUNSEL ON APPEAL FOR APPELLANT:             Melissa Martin
                                             Assistant Public Defender
                                             Harris County, Texas
                                             1201 Franklin Avenue, 13th floor
                                             Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................................ii

TABLE OF CONTENTS ................................................................................................................iii

INDEX OF AUTHORITIES ........................................................................................................ v

STATEMENT OF THE CASE........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................ 1

ISSUE PRESENTED ..................................................................................................................... 2

Defense counsel at trial was ineffective because he failed to attempt to suppress Mr. Scott's alleged response to officer's question as to whether he had a crack pipe in his pocket. The record demonstrates:

(a) appellant was in custody at the time the officer allegedly the question and the Fourth Amendment required he be apprised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) prior to being interrogated and;

(b) the alleged statement was obtained during a custodial interrogation and required appellant be apprised of his rights as enumerated in Art. 38.22(a) §3 prior to questioning. Tex. Code Crim. Proc., Art. 38.22(a) §3.

But for the alleged statement the officers would have had no authority to arrest appellant and would not have found either the crack pipe or the pistol. Tex. Code Crim. Proc. Art. 14.3(6) and the motion to suppress would either have been granted or error preserved.

SUMMARY OF THE ARGUMENT .......................................................................................... 3

ARGUMENT................................................................................................................................. 4

   A.  STANDARD OF REVIEW ...................................................................................... 4

      1.  INEFFECTIVE ASSISTANCE OF COUNSEL............................................................ 4

2. MOTIONS TO SUPPRESS ................................................................ 5

3. APPLICABLE FOURTH AMENDMENT AND STATUTORY LAW ............................ 6

    (A). TRAFFIC STOPS ................................................................ 7

    (B). PEACE OFFICERS' AUTHORITY TO MAKE A WARRANTLESS ARREST ............ 8

B. APPLICATION .................................................................... 9

    1. THE TRAFFIC STOP WAS AN INVESTIGATIVE DETENTION ................................. 9

    2. THE QUESTION BEGAN A CUSTODIAL INTERROGATION ................................. 11

    3. ART. 14.3 (A)(6) DID NOT AUTHORIZE MR. SCOTT'S WARRANTLESS ARREST 12

C. INEFFECTIVE ASSISTANCE OF COUNSEL .................................................. 13

    1. DEFICIENT PERFORMANCE ............................................................. 13

    2. PREJUDICE ............................................................................. 14

PRAYER ............................................................................................. 15

CERTIFICATE OF SERVICE ...................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................. 16

# INDEX OF AUTHORITIES

**Cases**

*Andrews v. State,* 159 S.W. 3d 98 (citations omitted) ............................................................ 5

*Berkemer v. McCarty*, 468 U.S. 420(1984)............................................................................. 7

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002)......................................................... 5

*Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010) ...................................................... 7, 9

*Davis v. State*, 947 S.W. 2d. 240 (Tex. Crim. App. 1997)................................................... 7

*Dowthitt v.State*, 931 S.W.2d 244 (Tex. Crim. App. 1996)................................................... 12

*Francis v. State*, 896 S.W. 2d, 408 (Tex.App.—Houston [1ˢᵗ Dist.] 1995)......................... 7

*Johnson v. State*, 414 S.W.3d 184 (Tex. Crim. App. 2013) ...........................................passim

*Kothe v. State*, 152 S.W.3d at 63 ........................................................................................ 6, 7

*Miranda v. Arizona,* 384 U.S. 436 (1966)...........................................................................passim

*Ohio v. Robinette*, 519 U.S.33, 39 (1996)............................................................................. 7

*Ortiz v. State*, 382 S.W.3d 367, 371 (Tex. Crim. App. 2012) ...................................7, 12, 13

*Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)**per curiam*)................................................. 7

*State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011)...................................... 8

*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) ................................. 6

*State v. Kerwick*, 393 S.W. 3d 270, 273 (Tex. Crim. App. 2013) .............................6, 10, 14

*Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879 (1968)..................................................... 7

**Statutes**

Tex. Code Crim. Proc. Art. 14.3(6) ........................................................................ 3

Tex. Code Crim. Proc. Art. 14.3(a)(6).................................................................. 8, 12

Tex. Code Crim. Proc. Art. 38.22 §2(a) (1)-(5) ..................................................... 8

Tex. Code Crim. Proc. Art. 38.22 §2(b)................................................................. 8

Tex. Code Crim. Proc. Art. 38.22 § 3 ............................................................... 3, 4, 13

Tex. Code Crim. Proc. Art. 38.22 §3(a) ............................................................ 3, 12

Tex. Code Crim. Proc. Art. 38.22 §3(a) (1)-(5) ..................................................... 8

**Constitutional Provisions**

Tex. Const. Art.1, §9 ............................................................................................ 11

U.S. Const. Amend. IV .................................................................................... 3, 6, 7, 11

U.S. Const. Amend. V............................................................................................. 11

**Statement of the Case**

Damian Scott, appellant, was charged by indictment with two offenses: felon in possession of a weapon, Cause No. 01-15-00053-CR, and evading arrest and detention, Cause Number 01-14-00054. On December 2, 2014 the trial court denied appellant's Motion to Suppress the detention, arrest, and fruits of illegal search and, during the ensuing bench trial, appellant pleaded guilty. The trial court sentenced him to serve six years on the felon-in-possession charge and four years on the evading arrest and detention charge in the Institutional Division of the Texas Department of Criminal Justice; the sentences to be served concurrently. There was no motion for new trial.

**Statement of Facts**

On December 1, 2013 Houston Police Department (HPD) Officers Brewster and Rothberg stopped Mr. Scott, who was riding his bicycle down Scott Street late at night, for traffic violations (2 R.R. at 22-23). The alleged violations were having no headlight on the bicycle, swerving "back and forth in the lanes," and failing to signal a turn (2 R.R. at 21-22).

Brewster testified the stop involved pulling up in the fully marked patrol car "with our lights and strobes and everything," shining the spotlight at him, and telling him to "stop riding his bicycle, at which point he did" (2 R.R. at 23).

Mr. Scott testified at the motion to suppress that, prior to arresting him, the officers asked him for consent to search him, he refused, and they searched him anyway (2 R.R. at 11). The search, if it occurred, yielded a crack pipe and a pistol (2 R.R. at 11).

1

Officers Brewster and Rothberg, on the other hand, testified that they asked Mr. Scott to identify himself and told him why they had stopped him (2 R.R. at 23). After that, Brewster told the trial court the following:

> And, as usual, what I always do is I ask people if they have anything illegal on them, primarily any kind of narcotics or any kind of weapons. At which point, the defendant advised me and my partner he had a crack pipe on him, which is illegal.

> Q. Did he say the word crack pipe or did he use any kind of different lingo?

> A. He – I believe I asked him if he had a crack pipe on him and he said: Yes, I have a crack pipe on me.

> Q. Okay. Did he tell you where it was?

> A. He said it was in his jacket pocket in the front.

> Q. After he told you that, did you have probable cause to search him?

> A. Yes.

(2 R.R. at 24).

The officers testified that they discovered the gun as they were cuffing appellant's hands behind his back (2 R.R. at 23). When the officers retrieved the pistol, appellant ran off (2 R.R. at 16).    At no point in the record does it appear that Mr. Scott was apprised of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966).

## Issue Presented

**One:** Defense counsel at trial was ineffective because he failed to attempt to suppress Mr. Scott's alleged response to officer's question as to whether he had a crack pipe in his pocket. The record demonstrates:

2

(a) appellant was in custody at the time the officer allegedly the question and the Fourth Amendment required he be apprised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) prior to being interrogated and;

(b) the alleged statement was obtained during a custodial interrogation and required appellant be apprised of his rights as enumerated in Art. 38.22(a) §3 prior to questioning. Tex. Code Crim. Proc., Art. 38.22(a) §3.

But for the alleged statement the officers would have had no authority to arrest appellant and would not have found either the crack pipe or the pistol. Tex. Code Crim. Proc. Art. 14.3(6) and the motion to suppress would either have been granted or error preserved.

## Summary of Argument

The officers' show of authority, in addition to Brewster's asking appellant if he "had a crack pipe on him," constituted an investigative detention requiring the officers apprise him of his rights under the Fourth Amendment prior to questioning him. *Johnson v. State*, 414 S.W.3d 184(2013).

Article 14.3(6) authorizes peace officers to arrest, without a warrant, a person who makes a statement to the officer that would be admissible under art. 38.22 and establishes probable cause to believe the person has committed a felony. Tex. Code Crim. Proc. Art. 14.3(6). Article 38.22, Section (3) prohibits the admission of oral custodial statements unless the person has been given the warnings required by the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Art. 38.22 § 3.

3

Mr. Scott was in custody when the officer asked him the question eliciting the incriminating answer; no reasonable person would have felt free to leave under the circumstances of the stop. *See Johnson v. State*, 414 S.W.3d 184 (Tex. Crim. App. 2013). The arrest was illegal because the record indicates no evidence that Mr. Scott was apprised of his rights prior to being interrogated or that the statement was recorded. Tex. Code Crim. Proc. Art. 38.22, § 3).

Failure to attempt to suppress the statement was deficient on its face and undermines confidence in the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668 (1984)

## Argument

### A. Standard of Review

#### 1. Ineffective Assistance of Counsel

The Court of Criminal Appeals in *Hernandez v. State*, 726 S.W. 2d 53 (Tex. App. 1986), adopted the two-pronged test articulated in *Strickland v. Washington,* 466 U.S. 668, 694 (1984) to determine whether counsel has been constitutionally ineffective. To have a conviction reversed on the grounds of ineffective assistance of counsel an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. *Strickland,* 466 U.S. at 687.

Appellate courts' review of counsel's performance must be highly deferential. *Id.* "There is a strong presumption that counsel's conduct falls within a wide range of

4

reasonable professional assistance, and the defendant must overcome the presumption. We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct." *Andrews v. State,* 159 S.W. 3d 98, 101 (Tex. Crim. App. 2005)(citations omitted).

The record on appeal is in almost all cases inadequate to show that counsel's conduct fell below and objectively reasonable standard of performance and that the better course is to pursue the claim in habeas proceedings. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). But when no reasonable trial strategy could justify counsel's conduct, counsel's conduct falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did. *Strickland, supra,* at 690.

> We do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. The defendant must show only that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Andrews v. State,* 159 S.W.3d 98, 102 (Tex. Crim. App. 2005), citing *Strickland, supra,* at 694.

### 2. Motions to Suppress

Appellate courts review a trial court's ruling on a motions to suppress in the light most favorable to the ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes no explicit findings of fact, as in the instant case, the

5

appellate court infers the necessary factual findings that support the trial court's ruling if the record evidence, viewed in the light most favorable to the ruling, supports these implied fact findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

Motions to suppress are reviewed pursuant to a bifurcated standard under which the "[t]he trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. But when mixed questions of law and fact do not depend on credibility and demeanor, we review the trial court's ruling *de novo*." *State v. Kerwick*, 393 S.W. 3d 270, 273 (Tex. Crim. App. 2013).

> On appeal, the question of whether a specific search or seizure is "reasonable" under the Fourth Amendment is subject to *de novo* review.[23] Despite its fact-sensitive analysis, "reasonableness" is ultimately a question of substantive Fourth Amendment law.[24] It is true that, in assessing this legal issue, courts give great deference to the trial court's findings of historical fact.[25] However, questions involving legal principles and the application of law to established *63 facts are properly reviewed *de novo*.[26] Thus, in deciding whether [petitioner]'s [seizure] was "reasonable" under the specific circumstances, we view the trial court's factual findings in the light most favorable to his ruling, but we decide the issue of "reasonableness" as a question of Fourth Amendment law under Supreme Court precedent.

*Kothe,* 152 S.W.3d at 62-63.

### 3.    Applicable Fourth Amendment and Statutory Law

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Constitution, Am. IV. There are three categories of police-civilian contacts: casual encounter, investigative detention, and seizure. *Francis v. State*, 896 S.W.

6

2d, 408-409 (Tex.App.—Houston [1ˢᵗ Dist.] 1995); *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879 (1968).

**(a)    Traffic stops.**

Whether or not a traffic stop is a casual encounter or an investigative detention under the Fourth Amendment depends on whether the police actions and/or words used to initiate the stop would convey to a reasonable person that he is free to walk away. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *Johnson v. State*, 414 S.W.3d at 193. In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to a formal arrest, given all the objective circumstances. *Ortiz v. State*, 382 S.W.3d 367, 371 (Tex. Crim. App. 2012), citing *Berkemer v. McCarty*, 468 U.S. 420, 441(1984).

If the stop is or becomes an investigative detention, the length and scope of the detention must be reasonable. *Davis v. State*, 947 S.W. 2d. 240, 243, 245 (Tex. Crim. App. 1997). "Reasonableness" under the Fourth Amendment is measured "in objective terms by examining the totality of the circumstances" and "eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the … inquiry." *Ohio v. Robinette*, 519 U.S.33, 39 (1996), as cited in *Kothe v. State*, 152 S.W.3d at 63. It requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions. *Id,* citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)*per curiam).*

7

To justify an investigative detention, the police officer must be able to point to specific and articulable facts which, taken together, with rational inferences from those facts and the officer's experience and general knowledge, lead him to conclude that the person detained actually, is, has been, or soon will be engaged in criminal activity. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).

#### (b) Peace officers' authority to make a warrantless arrest.

Article 14.3, §(a)6 authorizes the warrantless arrest of "a person who makes a statement to the peace officer that would be admissible against the person under Article 38.21 and establishes probable cause to believe that the person has committed a felony." Tex. Code Crim. Proc. Art. 14.3(a)(6).

Article 38.22 governs statements made by an accused that may or may not be used against him. Section 3 prohibits the use of an oral statement made by the defendant during a custodial interview unless (1)the statement is recorded; (2) prior to making the statement, the accused has been advised of the rights contained in section 2 of the article, (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; (4) all voices are identified; and (5) not later than 20 days before the date of the proceeding the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under the article. Tex. Code Crim. Proc., Art. 38.22 §2(a)(1)-(5) &(b); §3(a)(1)-(5).

8

**B.      Application**

**1.      The traffic stop was an investigative detention.**

Officer Brewster described the stop as follows:

> We stopped him. We pulled up in our police vehicle that's fully
> marked, says Houston Police on the side with our lights and strobes
> and everything. I was the driver that night, so I had access to the
> spotlight. I lit him up so we could see him. My partner had his
> window rolled down and he verbally told the defendant to stop
> riding his bicycle, at which point he did. And we began speaking to
> him.

(2 R.R. at 23).

Mr. Scott stated "I was pulled over – I stopped, I submitted, and they pulled –
they shined the light on me and went in front of me and cut me off" (2 R.R. at 8). The
two accounts of the initial part of the stop are consistent with one another.

An investigative detention, which implicates Fourth Amendment protections,
"occurs when a person yields to the police officer's show of authority under a
reasonable belief that he is not free to leave." *Crain,* 315 S.W.3d at 49.      In *Johnson v.
State*, the Court of Criminal Appeals reviewed factors the court of appeals had
considered in determining whether a detention had occurred, namely:

> … that the officer: 1) approached appellant's vehicle, which was backed
> into a parking spot outside the gate of an apartment complex at night with
> its lights on and engine running; 2) parked his police vehicle at an angle
> that at least partially blocked appellant's egress but did not prevent him
> from "maneuvering" around the officer and driving away; 3) shined his
> police vehicle's spotlight inside appellant's car; 4) did not activate his siren
> or emergency lights or use a bullhorn or loudspeaker to communicate with
> appellant; 5) approached appellant's car and asked, "What's going on, what
> are you doing out here?" and requested appellant's identification; and 6)

9

did not carry a flashlight, draw a weapon, order appellant to put his hands up, or otherwise inform appellant that he was being detained. *Johnson,* 359 S.W.3d at 733.

*Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013).

In Johnson, the intermediate court had had before it a trial court's ruling denying the motion to suppress in that case wherein the trial court had made no explicit findings as to whether a detention had occurred. The court of appeals reviewed the evidence "in the requisite light most favorable to the trial court's ruling and infer the necessary factual findings that support the trial court's ruling if the evidence supports those findings" *Johnson*, 414 S.W.3d at 192-93. The intermediate court then decided the evidence supported the trial court's implicit finding that there was no detention under those circumstances. *Id* at 193.

The Court of Criminal Appeals pointed out that the lower court should have reviewed the issue of encounter versus detention *de novo. See Kerwick*, 393 S.W.3d at 273). The Court then concluded that under the totality of circumstances listed above, "a reasonable person would not have felt free to leave or decline the officer's requests." *Id.* The Court explained:

> We point out that the officer's shining of a "pretty darn bright" high-beam spotlight onto a person sitting in a parked vehicle, parking the police car in such a way as to at least partially block the person's vehicle such that the person would have had to "maneuver" around the police car to drive away, using a "loud authoritative voice" in speaking with the person, asking "what's going on," and demanding identification manifests a detention, that is, an interaction that a reasonable person would not feel free to terminate. While none of these circumstances individually would necessarily lead to an inescapable conclusion that the person was detained,

10

under the totality of these circumstances, **we conclude that appellant was indeed detained—perhaps when the officer shined a bright light on him in his car, but certainly when the officer blocked appellant's car such that appellant would have had to "maneuver" his car from its parking place if he wished to terminate the interaction—thus implicating Fourth Amendment protections.** On this record, the trial court could not reasonably have concluded that a reasonable *194 person in appellant's shoes would have felt free to disregard the officer's approach, show of authority, and commands or felt free to terminate the interaction.

*Johnson*, 414 S.W.3d at 193-94.

In this case, the police pulled in front of a man on a bicycle, "with [their] lights and strobes and everything," shined a spotlight shined on him, and demanded he stop riding his bicycle and, according to Brewster, asked him whether he had a crack pipe on him even before he checked for warrants (2 R.R. at 23).

**2. The question began a custodial interrogation.**

Once the police activity had caused Mr. Scott to yield to the officers' show of authority and asked him who he was and where he was going, Officer Brewster made clear he suspected him of criminal activity beyond the traffic offenses. In asking him whether he had a crack pipe, the officer began an interrogation into a different crime.

Under the totality of these circumstances, no reasonable person would have felt free to terminate the interaction. The officers should have apprised Mr. Scott of his rights under *Miranda.* U.S. Const. Ams. IV, V; Tex. Const., Art.1, §9.[1]

---

[1] In an Addendum to its opinion in *State v. Ortiz*, the Court of Criminal Appeals made clear that the defendant does not have to show he fits into one of the four categories enumerated in that case: "The *Dowthitt* categories were intended to be merely descriptive, not exhaustive. We held that the four

## 2.      Art. 14.3 (a)(6) did not authorize Mr. Scott's warrantless arrest.

Assuming, as quoted above, Mr. Scott replied to Officer Brewster's question: "Do you have a crack pipe on you" with "Yes, I have a crack pipe on me" that statement would fall under section (a)(6), since it established probable cause to believe Mr. Scott had committed a felony. Tex. Code Crim. Proc. Art. 14.3(a)(6). If the statement had been admissible under Art. 38.22, then the officers would have been authorized to arrest Mr. Scott on the basis of that statement.

The statement, however, was inadmissible under Art. 38.22 because Section 3(a) of that article explicitly excludes its use against Mr. Scott. The pertinent part of the statute states:

> Sec. 3(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording is made of the statement;
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently waives any rights set out in the warning.

Tex. Code Crim. Proc. Art. 38.22§3(a).

In *State v. Ortiz*, the Amarillo court of appeals considered whether statements admissible under §3(c), absent the warnings. The court stated:

> The state appears to assume that statements admissible under §3(c) are exempt from the requirements of *Miranda*. That is, an oral statement

---

categories '*at least*… may constitute custody.'" *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex.Crim. App. 2012) discussing *Dowthitt v.State*, 931 S.W.2d 244 (Tex. Crim. App. 1996).

12

obtained during custodial interrogation, meeting the exception of §3(c) would be admissible, even if not preceded by the *Miranda* warnings. For this proposition, the State cites no authority and we can envision none since such a rule would engraft an additional, unrecognized exception onto *Miranda*.

*State v. Ortiz*, 346 S.W.3d 127, 136 (Tex. App.—[Amarillo, Panel D] (2011)(pet. granted).

It is the state's burden to show that a defendant was given proper warnings or will face the suppression of any statements given by the defendant. *Miranda*, 384 U.S. at 492-93; Tex. Code Crim. Proc., art. 38.22 § 3.

In dealing with custodial interrogation, [a court] will not presume that a defendant has been effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded on a record that does not show any warnings have been given or that any effective alternative has been employed. Nor can a knowing and intelligent waiver of these rights be assumed on a silent record.

*Miranda*, 384 U.S. at 498-99.

In summary, Mr. Scott was the subject of a custodial interrogation and the state made no showing that he was apprised of his constitutional rights under *Miranda*; the statement he made in response to the officer's question should have been should have been included in the motion to suppress.

## C. Ineffective Assistance of Counsel

### 1. Deficient Performance

The statement, assuming it was made, was what prompted the officers to retrieve the crack pipe from Mr. Scott's pocket and gave them probable cause to arrest him. It

was when Brewster was about to handcuff him that Rothberg said he saw the pistol (2 R.R. at 46).

Because the statement came in without an attempt to suppress it or an objection, the proceeding was reduced to a credibility match between Mr. Scott and the officers as to whether they searched him without consent or whether Mr. Scott gave them probable cause to arrest him after telling them he had a crack pipe. The standard of review on questions of credibility and demeanor gives almost total deference to the trial court "But when mixed questions of law and fact do not depend on credibility and demeanor, we review the trial court's ruling *de novo." Kerwick*, 393 S.W.3d at 273.

Moving to suppress the statement would have raised issues as to the nature of the stop and the reasonableness and this Court could then review the trial court's inferred determinations *de novo.* Had counsel moved to suppress the statement, the law would have required its suppression. *Miranda* at 492-93. Without the statement, there would have been no cause to search or arrest Mr. Scott. There could have been no conceivable strategy involved in failing to attempt to suppress the statement.

## 2. Prejudice

But for counsel's failure to move to suppress the statement, either the motion to suppress would have been granted, eliminating the need to proceed to trial, or error would have been preserved on the issue. Without the statement, neither the crack pipe crack pipe nor the revolver would have been legally seized and there would have been

14

no arrest, legal or otherwise, to evade. There can be no confidence in the outcome of the proceeding.

## Prayer

Mr. Scott asks the Court to reverse his conviction and remand for appropriate action by the trial court.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


/s/Melissa Martin

_____

**Melissa Martin**
Assistant Public Defender
Harris County Texas
1201 Franklin 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 437-4319 e-fax
TBA No. 24002532

## CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing brief to the Harris County District Attorney on the day the brief was accepted.

/s/ Melissa Martin

_____

**MELISSA MARTIN**
Assistant Public Defender

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1. Exclusive of the portions exempted by Tex. R. App. Proc. 9.4 (i)(1), this brief contains 3,822 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes produced by Microsoft Word software.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Melissa Martin

_____

**MELISSA MARTIN**